IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:15-CR-00372-M-1

UNITED STATES OF AMERICA

v.

GENESIS LEE WHITTED, JR.,

Defendant.

ORDER

These matters come before the court on Defendant's pro se motions for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (DE 346; DE 354; DE 363; DE 371)[1] and the United States' motion for leave to file a response out of time (DE 368). Defendant seeks a reduced sentence based on several purported extraordinary and compelling reasons, including (1) Defendant's medical circumstances; (2) his claims of ineffective assistance of counsel; (3) his unusually long sentence; and (4) his family circumstances. In response, the United States argues that Defendant's motions are moot because of President Biden's commutation of his sentence, from 420 months to 180 months. DE 369 at 1. For the reasons stated herein, the court finds that the Defendant's motions are not moot but that, on the merits, Defendant has failed to proffer an extraordinary and compelling justification for compassionate release. Additionally, even if Defendant had proffered a satisfactory justification, his motion would be denied based on the § 3553(a) sentencing factors. Defendant's unusually violent history, which apparently was not

---

[1] On April 10, 2025, the court appointed counsel to represent Defendant with respect to the motions filed at DE 363 and 371. Richard Croutharmel, Defendant's prior attorney for some of his post-conviction motions, entered an appearance on April 14, 2025. However, he has filed nothing in support of the pro se motions.

considered in the categorical decision to provide Defendant with a commutation, makes him a danger to the public and does not warrant a further-reduced sentence.

**Factual and Procedural History**

On December 21, 2016, a grand jury in the Eastern District of North Carolina returned a nine-count superseding indictment against Defendant Genesis Lee Whitted. DE 123. Count One charged defendant with conspiracy to distribute and possess with intent to distribute cocaine base in violation of 21 U.S.C. § 846. *Id.* at 1. Count Two charged defendant with possessing a firearm in furtherance of, and brandishing a firearm during and in relation to, a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). *Id.* at 2. Counts Three, Five, Six, Eight, and Nine charged defendant with distribution of Cocaine Base in violation of 21 U.S.C. § 841(a)(1). *Id.* at 3, 4, 6. Count Four charged defendant with distribution of cocaine base and aiding and abetting in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. *Id.* at 3. Count Seven charged defendant with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). *Id.* at 5. Aside from his direct charges, Defendant's criminal history is replete with violence, including multiple home invasions wherein Defendant tortured victims, multiple kidnappings and robberies involving firearms, and the shooting of a victim. DE 248 at 7, 10, 11.

Following a jury trial, Defendant was convicted of Counts One, Three, Four, Five, Six, Seven, Eight, and Nine and sentenced to a term of imprisonment of 420 months, followed by five years on supervised release. DE 260 at 1-3. Defendant timely appealed his sentence on March 13, 2018. DE 257 at 1. In August 2019, the Fourth Circuit affirmed the judgment of the district court. DE 269.

On April 15, 2024, and June 11, 2024, Defendant filed the instant pro se motions for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), requesting that his sentence be modified to a total of time served or otherwise reduced. *See* DE 346; DE 354. He contends that he can show a variety of "extraordinary and compelling reasons" for a reduction of his sentence. DE 346. Specifically, Defendant notes health risks, including his increased risk of COVID-19 hospitalization, ineffective assistance of counsel, his unusually long sentence, disparity among his co-defendants' sentences and his sentence, and his record of rehabilitation as the bases for his motion for compassionate release. *Id.* 6-12. Additionally, Defendant submits that his family circumstances necessitate a reduction in his sentence. DE 354 at 1.

On January 17, 2025, before the United States had responded to Defendant's motions, President Biden commuted Defendant's sentence to 180 months' imprisonment. DE 365. The United States, having failed to timely file a response to Defendant's compassionate release motions, filed a motion on March 11, 2025, requesting leave to file its response out of time. DE 368. In its proposed response, the United States does not address the merits of Defendant's motions, but rather, argues that President Biden's commutation of Defendant's sentence renders moot his request. DE 369 at 1. Defendant filed a reply in which he contends that the executive granting of clemency does not render moot his motions for compassionate release. DE 370 at 1.

Defendant has since filed an additional emergency motion for compassionate release on April 8, 2025, to which the United States has not filed an additional response, arguing again that his position as the sole caregiver for his children presents an extraordinary and compelling reason justifying his release. DE 371. The court is now fully apprised and finds as follows:

3

**Legal Standards**

Typically, a sentencing court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). "Congress provided an exception to that general rule . . . which permits courts to reduce a sentence or permit immediate release based on extraordinary and compelling reasons warranting such relief." *United States v. Centeno-Morales*, 90 F.4th 274, 278 (4th Cir. 2024) (quoting 18 U.S.C. § 3582(c)) (cleaned up). Once, these requests could only come from the Director of the Federal Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A) (2002). Following the passage of the First Step Act, however, federal inmates were authorized to directly file motions for compassionate release once they "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [at] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*; *see also Centeno-Morales*, 90 F.4th at 279.

In considering these motions, a district court must conduct a two-step analysis. *Id.* First, the court must determine whether a defendant is eligible for a sentence reduction because he or she has demonstrated extraordinary and compelling reasons for release. 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Hargrove*, 30 F.4th 189, 194–95 (4th Cir. 2022). Any potential sentence reduction must also be consistent with applicable policy statements issued by the United States Sentencing Commission, and the Commission has promulgated a non-exhaustive list of circumstances constituting acceptable "extraordinary and compelling" rationales. *United States v. Davis*, 99 F.4th 647, 654 (4th Cir. 2024); U.S.S.G. § 1B1.13(b). Because this list is non-exhaustive, a district court "has authority to consider any 'extraordinary and compelling reason'

4

that a defendant might raise, regardless of the Sentencing Commission's pronouncements or . . . definitions." *United States v. Johnson*, --F.4th--, 2025 WL 1872486, at *2 (4th Cir. July 8, 2025).

Second, if the court finds there are extraordinary and compelling reasons for a sentencing modification, it must then evaluate the relevant § 3553(a) sentencing factors. *Centeno-Morales*, 90 F.4th at 279. The defendant bears the burden of showing why the § 3553(a) factors justify a modified sentence, *id.*, and a court may deny the defendant's motion based on its own analysis of the factors, even if an extraordinary and compelling circumstance exists. *See United States v. Kibble*, 992 F.3d 326, 331–32 (4th Cir. 2021).

## Analysis

### I. Motion for Leave to File Response

In his reply to the United States' motion for leave to file a response to Defendant's motion and subsequent response, the Defendant does not address the basis for the government's motion. As such, any objection to the basis is deemed waived and the government's unopposed motion to file out of time is granted.

### II. Motions for Compassionate Release

#### A. Mootness

The United States argues that Defendant's motions are moot because President Biden commuted his sentence from 420 to 180 months' imprisonment. DE 369 at 1.

A claim is moot when "the parties lack a legally cognizable interest in the outcome," *Powell v. McCormack*, 395 U.S. 486, 496 (1969), which occurs when the court's resolution of an issue "could not possibly have any practical effect on the outcome of the matter." *Palmer v. Liberty Univ., Inc.*, 72 F.4th 52, 69 (4th Cir. 2023). In other words, a claim is mooted when the claimant

5

has already received the relief he or she sought through the claim. *See Williams v. Ozmint*, 716 F.3d 801, 809 (4th Cir. 2013). In the context of § 3582 motions, the mootness doctrine does not preclude a claim for compassionate relief where the request has been only partially achieved. *See United States v. Smith*, No. 23-6472, 2024 WL 1596672, at *2 (4th Cir. Apr. 12, 2024). In *Smith*, the Fourth Circuit held that a defendant's compassionate release claim, which sought a reduction in his sentence to time served, was not mooted by his release to home confinement. *See id.* The Fourth Circuit explained that, even though the defendant had been transferred to home confinement, he was still in the custody of the BOP and the district court had discretion to reduce his sentence to time served; therefore, the court had the authority to grant him effectual relief. *See id.*

In its response to Defendant's motion for compassionate relief, the United States relies on *Blount v. Clarke*, 890 F.3d 456, 461-63 (4th. Cir. 2018), and *United States v. Surratt*, 855 F.3d 218, 219 (4th Cir. 2017), to argue that Defendant's motion has been rendered moot by President Biden's commutation of his sentence. DE 369 at 1. Both cases concern incarcerated defendants whose sentences had been reduced by executive action. *See Blount* 890 F.3d 456 at 457 and *Surratt* 855 F.3d at 219. In *Blount*, the Fourth Circuit held that a defendant's habeas action was mooted by a gubernatorial partial pardon that reduced his sentence from life imprisonment to a "substantially reduced sentence." *Blount* 890 F.3d 456 at 462. The defendant had argued, through his habeas action, that a Supreme Court case decided after he was incarcerated entitled him to a new sentencing hearing because his life sentence was held to be unconstitutional. *Id.* at 457. Consequently, the governor's pardon effectively ended the live dispute at issue in the defendant's habeas action by curing any constitutional violation in the defendant's initial sentence. *See id.* at

6

461-62. In *Surratt*, the Fourth Circuit likewise held that a defendant's habeas petition, which challenged the constitutionality of his life sentence, was mooted by a Presidential commutation of the sentence to less than life. *See Surratt* 855 F.3d at 219.

Aside from the fact that the defendants in *Blount* and *Surratt* brought collateral attacks against their sentences through habeas petitions, whereas here, Defendant requests compassionate release, the critical difference remains that Defendant has not already received the relief he seeks through his claim. In *Blount* and *Surratt*, the defendants sought to avoid being subject to life sentences and received executive reductions in their sentences, thereby achieving the relief they sought. *See Blount* 890 F.3d 456 at 462 and *Surratt* 855 F.3d at 219. Here, Defendant seeks a reduction in his sentence to a total term of time served. DE 346 at 1. Despite President Biden's commutation of his sentence, Defendant remains imprisoned, meaning that the court's resolution of his request for compassionate relief could have a practical effect on the matter. Like the defendant in *Smith*, while Defendant's sentence has been reduced, it has not been reduced to time served, and the court maintains the authority to grant him effectual relief.

While the claims are not technically moot, circumstances have changed so much since Defendant's motion was filed that most of his arguments are severely undermined. Instead of the 420-month sentence on which his arguments are based, Defendant is now serving a 180-month sentence. This is less than half of his prior sentence, and half of the lower boundary that would have been established by a downward variance from a life guideline to a 360 months-life guideline range.

7

**B.     Timeliness of Defendant's Claims**

Section 3582(c)(1)(A) requires a court to consider whether a defendant bringing a motion for compassionate relief (1) has exhausted his administrative remedies; (2) if so, whether extraordinary and compelling reasons exist to warrant a reduction in his sentence; and (3) what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors. Defendant contends that the administrative exhaustion requirement has been met by submission of his request for compassionate release to the warden of his institution.  DE 346 at 2.  However, Defendant makes no such showing through documentation.  *Id.*  Nonetheless, "the statute's requirement that a defendant "exhaust administrative remedies "before filing a motion in the district court is a non-jurisdictional claim-processing rule," meaning that "it may be waived or forfeited." *United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021).  The United States has not raised an exhaustion challenge, so the court deems forfeited any argument that Defendant failed to exhaust administrative remedies before bringing his motions.

Documents filed pro se are to be "liberally construed" and "must be held to less stringent standards" than those filed by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 84 (2007).  As such, the court will consider all submitted extraordinary and compelling reasons proffered by Defendant for a reduction of Defendant's sentence.

**C.     Merits of Defendant's Claims**

**1.     Medical Circumstances of Defendant**

Defendant first argues that his "obesity," "underlying medical conditions," and status as a "former smoker" place him at an increased risk of severe illness from COVID-19.  DE 346 at 4, 12.  Specifically, Defendant describes himself as having a BMI at an "obesity level," and claims

8

to suffer from "high blood pressure, Lymm [sic], diabetes, and mental health," along with a variety of "post covid co-morbid conditions." *Id.* at 4.

The guidelines advise that extraordinary and compelling reasons exist when (1) the defendant is housed at a correctional facility "affected or at imminent risk of being affected by" an ongoing outbreak of infectious disease or an ongoing public health emergency; (2) due to "personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency;" and (3) such risk "cannot be adequately mitigated in a timely manner." U.S.S.G. § 1B1.13(b)(1)(D). "To establish that the risk posed by COVID-19 presents an extraordinary and compelling reason for release, the defendant must allege that the risk of contracting COVID-19 is higher in prison than outside of it, and that his preexisting conditions increase the risk of experiencing a serious or fatal case of the virus." *United States v. Davis*, 99 F.4th 647, 655 (4th Cir. 2024) (citing *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023)); *see also United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021).

Even assuming that Defendant is particularly susceptible to COVID-19, he does not demonstrate that he is housed at a correctional facility that is affected or at risk of being affected by an ongoing outbreak of infectious disease. Defendant is currently housed at Federal Correctional Institution, Williamsburg ("FCI Williamsburg"). *Find an Inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited June 3, 2025). The facility currently houses 1330 inmates, 927 of which are fully inoculated against COVID-19. *Inmate COVID-19 Data*, Federal Bureau of Prisons, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited June 3, 2025). Of the total population, only three have recently tested positive for the

9

virus.[2]  *Id.*  While these figures do not preclude the possibility that Defendant may become infected, or even suffer a serious infection from COVID-19, they do suggest that Defendant is not currently housed in a facility that is affected or at risk of being affected by an outbreak of COVID-19.  *See* U.S.S.G. § 1B1.13(b)(1)(D).  As such, Defendant cannot show that his risk of infection is higher while at FCI Williamsburg, and thus his risk of exposure does not constitute an extraordinary and compelling reason for the reduction of his sentence.

## 2.      Ineffective Assistance of Counsel

Defendant next argues that the ineffective assistance of his trial counsel is an extraordinary and compelling circumstance justifying a reduction in his sentence.  DE 346 at 5.  Specifically, Defendant argues that he was "prejudiced as a direct result of trial counsel's action[s] . . . for failing to give Petitioner the legal advice and knowledge needed," and that, had Defendant been "properly advised of the available options and possible sentencing consequences," he would have accepted the United States' plea offer.  *Id.* at 5-6.  He further contends that counsel was "ineffective for not pursuing a mental health evaluation" to show that he could not form "the specific intent to further the purpose of the conspiracy."  *Id.* at 8.

The Fourth Circuit has held that, because 28 U.S.C. § 2255 is the "exclusive method of collaterally attacking a federal conviction or sentence, a criminal defendant is foreclosed from the use of another mechanism, such as compassionate release" to collaterally attack a conviction.  *United States v. Ferguson*, 55 F.4th 262, 270 (4th Cir. 2022).  An action is a collateral attack if it "must in some fashion overrule a previous judgment."  *Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358, 360 (5th Cir. 1972).  Claims of ineffective assistance of counsel, because they seek

---

[2] The court revisited the website on July 3, 2025, and the COVID-19 statistics, both of inoculation and of infections, remain the same.

10

to overrule a previous judgment, are collateral attacks. *See Hinton v. Alabama*, 571 U.S. 263, 275 (2014). As such, Section 3582 is an improper vehicle for a collateral attack, such as an ineffective assistance of counsel claim. *United States v. Chavira-Nunez*, 689 F.App'x 896, 899 (10th Cir. 2017) (holding that the court lacked jurisdiction to consider an ineffective assistance of counsel argument under a defendant's Section 3582 motion). It is clear that Defendant's ineffective assistance of counsel claims, simpliciter, without contemplating the merits, cannot serve as the basis for his request for compassionate release. Because the claims seek to collaterally attack a violation of Defendant's Sixth Amendment rights in his original trial, they are not properly situated to satisfy the extraordinary and compelling reason standard of § 3582. They may, however, be considered as part of the court's exercise of its discretion concerning whether another legitimate basis exists. *United States v. Johnson*, --F.4th--, 2025 WL 1872486, at *2 (4th Cir. July 8, 2025); *see also United States v. McCoy*, 981 F.3d 271, 280 (4th Cir. 2020).

### 3. Unusually Long Sentence

Defendant further argues that his "unusually long sentence under a statutory provision that Congress has since found too punitive" is an extraordinary and compelling circumstance justifying a reduction in his sentence. DE 346 at 10. His 420-month sentence, he claims, is "unusually long" in comparison "to the average sentence of the same and similar convicted defendant in this circuit." *Id.*

The guidelines advise that if a defendant "received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law . . . may be considered in determining whether the defendant presents an extraordinary and compelling reason." U.S.S.G. § 1B1.13(b)(6); *United States v. Crawley*, --F.4th--, 2025 WL 1634789 at *6 (4th Cir. June 10, 2025)

11

("Because Crawley concedes that he has not spent 10 years' time in prison, consideration of the § 1B1.13(b)(6) factor of the amended policy statement is not available to him."). The change in law may only be considered "where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances." *Id.*

The primary issue with Defendant's claim is that he has not yet served ten years of his sentence. Defendant was arrested and detained on December 17, 2015, and he was convicted on October 18, 2017, which clearly fails to meet the ten-year requirement of the guidelines. DE 228. Further, there is no evidence that there has been a change in the law that applies to Defendant such that there would be a gross disparity between the sentence Defendant is serving and the sentence likely to be imposed today.[3] Finally, Defendant proffers no persuasive argument to suggest that his sentence remains unusually long following President Biden's commutation of his sentence.

### 4. Disparity in Sentencing

Defendant also suggests generally that the disparity between his and his co-defendants' sentences itself is an extraordinary and compelling reason warranting compassionate release. DE 346 at 7. Defendant was sentenced to 420 months, whereas his co-defendants, Joel McLaurin and Wayne Whitted, received 28- and 26-month sentences, respectively. *Id.*

Courts must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6). As such, courts that have examined this issue have found that a sentencing disparity may, "in limited circumstances," serve as an extraordinary and compelling reason for the reduction

---

[3] The court is not independently aware, nor has Defendant suggested, any change in the law or sentencing guidelines which, if applied to Defendant, might constitute a "gross disparity."

12

of a defendant's sentence. *United States v. Petway*, No. 4:04-CR-00056-M-2, 2023 WL 4353690, at *4 (E.D.N.C. July 5, 2023). However, a court's consideration of sentencing disparities among defendants with similar records must account for whether the co-defendant was "similarly situated" to the defendant. *United States v. Locust*, No. 4:06-CR-40-1, 2025 WL 880148, at *4 (E.D. Va. Mar. 21, 2025). The defendants' relative criminal histories and involvement in the offense are relevant factors in determining whether a sentencing disparity between defendants can serve as an extraordinary and compelling reason for compassionate release. *See Monsanto v. United States*, No. 3:08-CR-88, 2011 WL 2447196, at *4 (W.D.N.C. June 15, 2011).

Here, Defendant and his co-defendants were not so similarly situated. First, Defendant was convicted after a jury trial, whereas his co-defendants both accepted plea agreements. *See United States v. Whitted*, Case No. 5:15-CR-00372-M-2 at DE 106 (E.D.N.C. Sept. 13, 2016) and *United States v. McLaurin*, Case No. 5:15-CR-00372H-003 at DE 98 (E.D.N.C. Aug. 10, 2016). In addition, Defendant was found guilty of seven counts and, for his guidelines range, the court determined he had a criminal history category of III and a maximum total offense level of 43, which included enhancements for maintaining a premises for the purpose of manufacturing or distributing a controlled substance, witness intimidation, evidence tampering or other obstruction of justice, physically restraining the victim in the course of the offense, and Defendant's role as an organizer or leader in the offense. DE 265 at 28. By comparison, his co-defendants each pled guilty to one count, and neither of the co-defendants' offense levels were increased due to aggravating factors, but rather, both received decreases because of their acceptance of responsibility. *See United States v. Whitted*, Case No. 5:15-CR-00372-M-2 at DE 106 (E.D.N.C. Sept. 13, 2016) and *United States v. McLaurin*, Case No. 5:15-CR-00372H-003 at DE 98

13

(E.D.N.C. Aug. 10, 2016). Defendant's sentencing guideline was life, whereas his co-defendants' guidelines ranges were significantly lower. Simply put, because Defendant was convicted of more serious crimes than his co-defendants, Defendant received a longer sentence. This is not one of the limited circumstances under which a disparity in sentencing between co-defendants can serve as an extraordinary and compelling reason for compassionate release.

In fact, the Fourth Circuit's recent decision in *United States v. Johnson*, --F.4th--, 2025 WL 1872486 (4th Cir. July 8, 2025), illustrates this point. In *Johnson*, the district court granted the defendant's § 3582(c) motion and reduced his sentence based on sentencing disparities between him and his co-defendants. *Id.* at 4. The defendant had been sentenced to two life terms plus 790 months, whereas his co-defendants had received 20-, 40-, and 5-year sentences for essentially the same underlying conduct. *Id.* at 3-4. Importantly, the district court noted, in Johnson's case, that the jury had found "mitigating circumstances" and his participation in the offense conduct was "minor." *Id.* at 5. Here, Defendant points to no such mitigating circumstances and the court finds none. As noted above, Defendant's conviction is not based on the same underlying conduct as his co-defendants, but rather, much more severe conduct. DE 248 at 20-21. Furthermore, his participation in the offense was not "minor"; in fact, Defendant received a four-point upward adjustment for his role in the offense as an organizer or leader. *Id.* at 21. The disparity between Defendant and his co-defendants' sentences is not an extraordinary and compelling basis for a reduction in his sentence, as it was in *Johnson*, but instead a reasonably measured difference meant to account for his comparatively severe conduct.

Defendant also has not shown that there is a disparity between his sentence and that of similarly situated defendants in other cases. For his argument, Defendant relies on *United States*

14

*v. Sappleton*, No. CR 01-284-PJM-3, 2021 WL 598232 (D. Md. Feb. 16, 2021). DE 346 at 7. The defendant in *Sappleton* successfully brought a Section 3582 claim by arguing that the "gross disparity" between his original sentence and the sentence he would have received at the time of his compassionate release motion was an extraordinary and compelling reason for a reduced sentence. *Sappleton*, 2021 WL 598232 at *2. Defendant is not similarly situated to Sappleton, who received a sentencing enhancement that raised his criminal history score and mandated a life sentence. *Id.* at 3. Had Sappleton been sentenced at the time of his motion for compassionate release, as a result of changes in sentencing enacted by the First Step Act, that enhancement would not have applied, and he also would have faced a different sentencing guideline range. *Id.* Here, there is no evidence that Defendant would be sentenced any differently today than he was in 2018.

### 5. Family Circumstances

Defendant also argues that extraordinary and compelling circumstances exist because his "two minor children" are in "urgent need of his care and protection." DE 371 at 1. Defendant submits that both of his minor children have "endured significant trauma," including sexual assault, and that both children are not receiving adequate care. Specifically, Defendant advises that currently, one child is in the care of their grandmother, who has "struggled significantly with the financial, emotional, and physical demands of caring for him," and that the other is in the custody of social services. *Id.* This argument is necessarily predicated on the argument that Defendant would be an appropriate caregiver for his minor children if released.

The guidelines provide that familial circumstances can constitute an extraordinary and compelling circumstance warranting a sentence reduction. U.S.S.G. § 1B1.13(b)(3). In relevant part, the guidelines suggest that such circumstances exist where there has been an "incapacitation

15

of the caregiver of the defendant's minor child." *Id.* § 1B1.13(b)(3)(A). Generally, compassionate release based on family circumstances is only granted where a defendant is the sole available caregiver for his or her minor child. *United States v. Bardwil*, No. 3:20-CR-436, 2023 WL 8421093, at *2 (W.D.N.C. Dec. 4, 2023). As such, courts have found that compassionate release based on incapacitation of the caregiver of defendant's minor child is inappropriate when "there may be relative caregivers available to take custody" of the child. *United States v. Sanchez*, No. 2:20-CR-10, 2024 WL 1653769, at *2 (W.D. Va. Apr. 16, 2024). Additionally, that an available caregiver may be inconvenienced or face some difficulty in caring for an incarcerated family member's child is not an extraordinary and compelling circumstance. *See United States v. Gonzales*, No. 17-CR-60223, 2021 WL 4066897, at *5 (S.D. Fla. Sept. 7, 2021) (finding that compassionate release was inappropriate because the defendant's husband was still caring for her children even though he faced demands from his job as a trucker). The bar to show incapacitation is high, and where a caretaker is capable, even with some difficulty, to feed, clothe, and shelter the child, a defendant is not entitled to compassionate release. *United States v. Smith*, No. 2:21-CR-00279-CDS-EJY, 2024 WL 4556521, at *5 (D. Nev. Oct. 22, 2024).

The case law surrounding whether a defendant's children being in foster care constitutes an extraordinary and compelling circumstance does not provide a clear answer. It is clear, however, that in the absence of a "robust evidentiary showing" that the defendant is the sole available caregiver, a court will not grant compassionate release. *See United States v. Richardson*, No. 5:18-CR-507-LFL, 2020 WL 2200853, at *2 (E.D.N.C. May 6, 2020). Some case law suggests that where a relative caregiver is "neither dead nor incapacitated," but does not want the

16

child in their home, and the child is in foster care, the defendant has not met the criteria for compassionate release. *United States v. Delgado*, 752 F.Supp.3d 439, 443 n.1 (W.D.N.Y. 2024).

In situations where the defendant's child is in foster care, and there is no relative available to care for them, some courts have found that the defendant has proven an extraordinary and compelling circumstance. *See United States v. Quinones Rodriguez*, No. 5:13CR30, 2020 WL 5045203, at *3 (W.D. Va. Aug. 26, 2020); *United States v. James*, No. 7:19-CR-00024-3, 2023 WL 6164018, at *4 (W.D. Va. Sept. 21, 2023). Other courts have required more, holding that a defendant who is seeking compassionate release because his or her child is in foster care must show that, were the defendant to be released, he or she would be both legally entitled to the custody of the child and a suitable caregiver for the child. *See United States v. Paul*, No. 3:18-CR-00227, 2020 WL 5807343, at *2 (S.D.W. Va. Sept. 25, 2020); *United States v. Ray*, No. 3:19-CR-46 JD, 2023 WL 3411024, at *3 (N.D. Ind. May 12, 2023); *United States v. Johnson*, No. 1:15-CR-00059-NONE, 2020 WL 6075867, at *5 (E.D. Cal. Oct. 15, 2020) (finding that extraordinary and compelling reasons did not exist because it was unclear based on the record before the court whether the defendant would be found "a 'suitable caretaker' for his child by the governing authorities"). In *United States v. Ray*, for example, the court held that the defendant, having failed to present evidence that he would have custodial rights over his children or whether he could provide a suitable living situation for them upon release, had not shown that the children's placement in foster care was an extraordinary and compelling reason for his release. 2023 WL 3411024, at *4.

While Defendant submits that he is the sole caregiver available for his two minor children, the evidence in support of that contention is murky. With respect to Defendant's child who lives

17

with his grandmother, Defendant is not the sole caregiver. Defendant has readily admitted that his child is currently being cared for by his mother. He also has not submitted any evidence that suggests that his contentions that his mother is struggling with the "financial, emotional, and physical demands" of caring for the child are substantiated. Further, even if he had submitted evidence of his mother's struggles, she would not qualify as incapacitated. As discussed above, the bar to show incapacitation is high, and where a caregiver is capable, even with some difficulty, of caring for the child, the caregiver is not incapacitated. Here, there is little evidence, beyond Defendant's statement, that his mother is incapacitated. His presentence report indicates that he "grew up in his mother's home where his basic needs were met and free of any type of abuse or neglect," suggesting that the child who lives with Defendant's mother is not suffering from an incapacitated caregiver. DE 248 at 17. Additionally, assuming Defendant's contentions regarding his mother to be true, it is still unclear that Defendant would be the sole caregiver of the child. Defendant's presentence report indicates that, in addition to his mother, he has three maternal half-siblings in Fayetteville that Defendant has not shown are incapable of caring for his child. DE 248 at 17. Without further factual description, Defendant has not shown either that he is the sole caregiver available for this child, or that there has been an incapacitation of the child's caregiver. Thus, Defendant has not demonstrated, at least with respect to this child, that an extraordinary and compelling circumstance justifies a reduction in his sentence.

Defendant's claim that he is the sole caregiver for his child who is currently in foster care is similarly hampered by a lack of factual support. To begin, it is unclear why the child is in foster care when the other child is being cared for by their grandmother. Even if the court is to assume that the child is in foster care because of the available relative caregivers' unwillingness to take

18

the child, Defendant still likely would not have proven that he is the sole caregiver for the child. Given the availability of the child's grandmother, which is evident from Defendant's own admission that his other child is under her care, DE 371 at 1, Defendant is necessarily not the sole caregiver. Defendant also has not proffered any evidence suggesting that, upon release, he would have custodial rights over the child or be capable of providing the child a suitable living space. He has not submitted any factual evidence to suggest that he has access to the resources to take care of the child, or that the child would be released from protective custody into his care if he were released. Simply put, Defendant has not met the evidentiary burden required to show that he can provide care for his child.

While it is possible that the foster care situation might suffice as an extraordinary and compelling reason justifying his release, without further factual evidence that Defendant would be capable of caring for the child, and, perhaps more importantly, that Defendant's family members could not take care of the child while he is incarcerated, Defendant has not made the necessary showing to justify compassionate release.

### D. Section 3553(a) Sentencing Factors

Defendant has not identified an extraordinary and compelling reason for compassionate release, but even if he had, the § 3353(a) factors weigh against granting the motion. *See Centeno-Morales,* 90 F.4th at 279. Defendant argues that he is "not a dangerous man" and emphasizes that his "prior criminal convictions included no violence." DE 346 at 12. He also suggests that evidence of his "post-sentencing rehabilitation" weighs in favor of release. *Id*. However, these statements do not erase the emphasis that § 3353(a) places on the nature and circumstances of the offense, and the history and characteristics of the defendant. 18 U.S.C.A. § 3353(a). In fact,

19

Defendant's crimes were consistently violent and suggest that he is a dangerous man. According to his presentence report, Defendant had a propensity for violence, including multiple home invasions, one of which involved pouring hot liquid onto a victim until he disclosed the location of drugs and currency. DE 248 at 7. Other testimony from cooperating witnesses suggest that Defendant was the perpetrator of multiple kidnappings and robberies, several of which involved holding victims at gunpoint, and one included the shooting of a victim. *Id.* at 10-11. The crimes Defendant was directly convicted of, too, suggest that his release would not work to "protect the public from further crimes of the defendant." 18 U.S.C.A. § 3353(a)(2)(C). Defendant was "conservatively" held accountable for 2538.075 grams of cocaine base, 6446.225 grams of cocaine, 3628.8 grams of marijuana, and 42.525 grams of heroin. *Id.* at 20. As evidenced by the quantities of drugs for which he was held accountable, Defendant engaged in "large scale drug trafficking," which is destructive to the public. DE 265 at 51. The public is not further protected by his release from his already significantly reduced sentence, especially without any evidence to suggest that he has been rehabilitated during his imprisonment.

Defendant's sentence has been already reduced by more than fifty percent. Given how little time Defendant has served of his original sentence, granting compassionate release at this stage would not reflect the seriousness of the offense, nor would it afford adequate deterrence to his criminal conduct. Judgment was entered for Defendant on March 6, 2018, and he has subsequently served less than ten years of his 35-year sentence. DE 255 at 2. Since then, his sentence was commuted to 180 months, or 15 years. DE 365 at 16. It is notable also that Defendant is not serving the sentence recommended by the guidelines and advocated for by the U.S. Attorney in his case, which would be life imprisonment. DE 265 at 51. In light of the nature of Defendant's

crimes and considering the comparatively small portion of his sentence that he has served, it is necessary, for the sake of adequate deterrence and reflecting the seriousness of Defendant's crimes, that the court maintain the imposed sentence.

## Conclusion

The court has granted the United States leave to respond to the present motions, but Defendant's motions for compassionate relief are not moot at this stage. On the merits, however, Defendant has failed to provide an adequate basis for compassionate release. He has not shown an extraordinary and compelling circumstance justifying his release, and even if he had, the Section 3553 factors counsel against his release. The court denies Defendant's motion for compassionate release.

Accordingly, the Defendant's pro se motions for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) [DE 346; DE 354; DE 363; DE 371] are DENIED and the United States' motion for leave to file a response out of time [DE 368] is GRANTED.

SO ORDERED this ___14th___ day of July, 2025.


_Richard E Myers II_
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE